## THE LISTIE.

(District Court, E. D. Pennsylvania. July 23, 1912.)

### No. 57 of 1909.

SHIPPING (§ 121*)—LOSS OF CARGO—UNSEAWORTHINESS—IMPROPER LOADING.
 The overturning of the after section of a jointed coal barge loaded with coal, on encountering the ordinary swells from other vessels while being towed in the harbor of Philadelphia in fair weather and smooth water, raises a presumption that it was unseaworthy for the carriage undertaken when it started, and the loss of the cargo must be attributed to that cause, where it was shown in addition that it was overloaded, and the load was not properly trimmed, and that the forward section, not so heavily loaded, carried its cargo in safety.

[Ed. Note.—For other cases, see Shipping, Cent. Dig. §§ 449–451; Dec. Dig. § 121.*

Liability of vessel owners for loss or injury from improper storage, see note to The Gualala, 102 C. C. A. 553.]

In Admiralty. Suit by the Insurance Company of North America against the barge Listie. On final hearing. Decree for libelant.

Lewis, Adler & Laws and J. Frank Staley, all of Philadelphia, Pa., for libelant.

Howard M. Long, of Philadelphia, Pa., for respondent.

J. B. McPHERSON, Circuit Judge. The libelant was the insurer of a cargo of coal amounting to 558 tons that was taken on board the barge Listie, to be carried in tow from the Port Richmond coal piers on the Delaware river to a wharf on the river Schuylkill. The barge was a hinged, or two-section, vessel, each section about 78 feet long, 18 feet beam, and 8 feet 4 inches from the water's edge to the top of the covering board. The capacity of each was from 270 to 278 tons, and on the voyage in question the forward section, or box, was carrying 269 tons, and the after section 289 tons. The voyage began about half past 6 o'clock on the morning of August 1, 1908, and proceeded without event for about three miles down the Delaware river; the weather being clear, the tide ebb, and the water smooth. At this point, nearly opposite Reed Street wharf, the after section turned

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

turtle, broke loose from the forward section, and spilled its cargo in the river. The loss was total, and the libelant paid it, taking an assignment from the shippers of their right of action. It is now averred that the barge, especially the after section, was unseaworthy in several particulars when the voyage began, and in my opinion this averment has been satisfactorily proved.

Clearly there was no peril of the sea to account for the disaster. It is true that the after section lost its equilibrium immediately after the barge encountered—practically at the same time—the swells from two ferryboats and from a third steamer. All these vessels passed on her port side, but the fact that she met them as she did would not of itself have been sufficient to turn her over. The vessels were not unusually near and the swells were not unusually high. In a busy harbor, such as the port of Philadelphia, numerous boats of many kinds and sizes are continually plying to and fro, and a barge must expect to meet several vessels near to her and near to each other. The conditions of weather and tide were in the barge's favor, and added nothing to the risks of the situation. The disaster was due primarily to the facts—which I think are clearly proved—that the barge, especially the after section, was not only overloaded, but was also improperly loaded. The forward section was not overturned and was not injured, but reached the Schuylkill with little delay and delivered her cargo in safety.

The evidence establishes that the after section had several inches of water in her when the voyage began; that she was carrying from 15 to 20 tons more than was reasonably safe, causing her to have an insufficient freeboard; that the coal was piled about 3 feet above her combing, tending to make her top-heavy; and that the cargo had not been trimmed, thereby causing her to have a list of about 6 inches to port. All these were faults, and in combination lead irresistibly to the conclusion that she was not fit to encounter the usual dangers of the voyage in question.

The case need not be further discussed. A presumption of unseaworthiness arises when, without adequate explanation, a disaster occurs soon after a voyage begins; and this presumption is strengthened in the present case by the fact that the less heavily loaded forward section, although exposed to precisely the same danger from the swells, met them safely and carried her cargo without loss. In addition, there is the direct evidence of the faults already referred to.

The libelant is entitled to a decree, with costs.